**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CINCINNATI**

| | |
|---|---|
| CHRIS DROLLINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNFLOWER LIMITED and SUNFLOWER TECHNOLOGY INC., d/b/a CrownCoinsCasino.com,<br><br>Defendants, | Case No. 1:26-cv-00210<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chris Drollinger, individually and on behalf of the other members of the below-defined Ohio classes, alleges against Defendants Sunflower Limited and Sunflower Technology, Inc., d/b/a CrownCoinsCasino.com (collectively, "Crown Coins Casino" or "Defendants"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I. BACKGROUND

1. This Class Action lawsuit is brought by Plaintiff seeking damages, declaratory, injunctive, and equitable relief individually on behalf the other Class members, each of whom are Ohio residents who have paid and lost money or other things of value on CrownCoinsCasino.com (the "Class").

2. Crown Coins Casino owns and operates a popular, casino-oriented internet gaming website called www.crownoinscasino.com.

3. Gambling is heavily regulated and mostly outlawed in Ohio. *See* Ohio Rev. Code Ann § 2915.01, *et seq*.

4. Yet Crown Coins Casino is accessible and operational in Ohio without receiving proper licenses, registrations, and approvals. Nor is Crown Coins Casino listed as an approved sweepstakes provider in Ohio.

5. Crown Coins Casino does not operate to promote or market another product or service; Crown Coins Casino is the product or service.

6. Crown Coins Casino operates indefinitely and not for a fixed period of time.

7. On its website, users can play "top free-to-play casino style games," primarily slot games. ("Chance Games").

8. The Chance Games are games of chance. In fact, Crown Coins Casino has admitted such on its Instagram feed, captioning promotional posts with statements such as "Want to win a hot lap? Today is your chance!";[1] "a chance for YOU to win big!";[2] and "every spin is another chance to light up your night!"[3]

9. Crown Coins Casino offers prizes, such as cash or cash-equivalent gift cards, to online participants who wage money to play the Chance Games.

10. Even then, as further alleged below, free play doesn't offer the prizes that attract Ohio residents, including Plaintiff, to Crown Coins Casino. Instead, Ohio residents, including Plaintiff, access Crown Coins Casino to win prizes, just as Crown Coins Casino intends. And the only way to win prizes is with Sweepstakes Coins.

11. Nonetheless, the Ohio courts have long held that the availability of free chances is not necessarily dispositive of whether the game is a gambling scheme. *Freedom Concepts, Inc. v. Ohio Liquor Control Comm'n,* 2003-Ohio-4686 (holding

---

[1] @crowncoinscasino, Instagram (Aug. 16, 2025), https://www.instagram.com/p/DNbHlujNCPv/?hl=en.

[2] @crowncoinscasino, Instagram (Aug. 20, 2025), https://www.instagram.com/p/DNlucRLPLMD/?hl=en.

[3] @crowncoinscasino, Instagram (Aug. 21, 2025), https://www.instagram.com/p/DNnlACNtdNk/?hl=en.

that a free game did not change the fact that the player was paying for a chance to win a prize, making the machine a gambling device).

12. Since Crown Coins Casino requires participants to submit consideration for a chance to win a prize, it is an illegal gambling operation in Ohio.

13. The legality of Crown Coins Casino is not in question in states like Ohio with strict gambling laws.

14. Plaintiff and Class members each wagered money or other things of value on CrownCoinsCasino.com and lost.

15. Moreover, Crown Coins Casino engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Ohio, including causing Plaintiff and Class members to believe Crown Coins Casino was approved and certified by the State of Ohio when in fact it is illegal gambling.

## II. THE PARTIES

16. Plaintiff Chris Drollinger is domiciled in Ohio and a resident of Addyston, Ohio. Plaintiff wagered and lost money on Defendants' illegal gambling. As a result, he suffered an injury in fact resulting in the loss of money and/or property that is recoverable in Ohio. Plaintiff did not know Crown Coins Casino was illegal gambling in Ohio. Based on Crown Coins Casino's advertising and website, Plaintiff thought that Crown Coins Casino was legal in the State of Ohio, among other things. Had he known the truth, he would not have participated in online gambling on CrownCoinsCasino.com.

17. Defendant Sunflower Limited is a private company registered in Israel and with its registered office at Ben Avigdor St 10, Tel Aviv, Israel 6721834. Defendant also maintains a U.S. address at P.O. Box 5114, Fredericksburg, VA 22403. Defendant Sunflower Limited owns and operates CrownCoinsCasino.com. The sweepstakes promotions and prizes offered at CrownCoinsCasino.com are operated by Defendant Sunflower Limited.

18. Defendant Sunflower Technology, Inc. is Delaware corporation with its principal place of business in Arlington, VA. All payments on CrownCoinsCasino.com are processed by Sunflower Technology. Sunflower Technology may accept service via its registered agent McDermott Corporate Services LLC, 1000 North West St., Ste. 1400, Wilmington, DE 19801.

19. Through the CrownCoinsCasino.com website, Defendants Sunflower Limited and Sunflower Technology conduct business in Ohio, including this District. Defendants Sunflower Limited and Sunflower Technology are not registered to do business in Ohio.

## III. JURISDICTION AND VENUE

20. This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiff and one or more of the other Class members are citizens of a different state than Defendants.

21. Venue is proper in this District under 28 U.S.C. § 1391 because Crown Coins Casino is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Plaintiff wagered and lost money on CrownCoinsCasino.com in this District, and Crown Coins Casino has marketed and advertised its website in this District, made its website accessible in this District, accepted wagers in this District, and paid out prizes in this District, among other things. Thus, a substantial part of the events or omissions giving rise to the claim occurred within this District.

22. This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Ohio and consents to the jurisdiction of the Court.

23. This Court has personal jurisdiction over Crown Coins Casino because Crown Coins Casino, at all times relevant hereto, has systematically and continually

conducted, and continues to conduct, business in this State, and this lawsuit arises out of those contacts with Ohio.

24. Specifically, CrownCoinsCasino.com is an interactive website used for commercial purposes – specifically, gambling.

25. It was foreseeable and intended that Ohio residents would use CrownCoinsCasino.com because Defendants knew that Ohio residents frequently gamble on the website and that they would continue to do so.

26. Defendants know that Ohio residents use the website because it utilizes technology that allows websites to detect the location of a website visitor, including the state in which they are located. In fact, Crown Coins Casino encouraged Ohio residents' use of its website by not listing Ohio as an excluded territory and permitting users based in Ohio to use its website.

27. Crown Coins Casino also advertises to Ohio residents in Ohio, and emails Ohio residents about games and other offers it seeks to promote or the status of their accounts and transactions.

28. In other words, Crown Coins Casino reached into Ohio and invited its customers to participate on its website.

29. Crown Coins Casino appeals to, and profits from, an audience in Ohio, and Ohio residents form a significant portion of the website's customer base and revenue.

30. Crown Coins Casino also collects information and data about Ohio residents.

31. Crown Coins Casino took steps to ensure that Ohio residents would have access to the website so that they could gamble online.

## IV. THE PROBLEM OF ONLINE GAMBLING

32. The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited from opioids.

33. For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $7 billion. But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline. According to one study, up to 30 percent of problem gamblers have attempted suicide, while a larger percentage of such individuals reported having suicidal ideations.

34. The United States may be on the cusp of an explosive growth of gambling addiction akin to the opioid crisis, fueled by online access to gambling websites. Gambling disorder can take as long as five to seven years to develop. During the last five to seven years, online gambling websites proliferated with no way to reduce the ensuing harm. The federal government spends no money on gambling addiction programs, and state gaming commissions regulate gambling unevenly, at best.

35. The fallout is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers.

36. Online gambling addiction also has massive social consequences, resulting in the drain on state government funds to address addiction, the rise in teenage online gambling addiction, and the rise in crime associated with online gambling addiction.

37. This rise also includes a relatively new phenomenon: gambling addiction among minors under the age of 18. Whereas brick-and-mortar casinos could take steps to exclude minors, the easy access to online gambling has made it easier for underage minors to participate in gambling. Websites like CrownCoinsCasino.com are designed to attract adolescents as well as adults and are causing a sharp rise in online gambling addiction among minors.

38. Treating online gambling addiction poses challenges that are different from other forms of addiction. For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment. Things are not so clear-cut when treating digital gambling because for most people, mobile devices have become a necessity of life. So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal. Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

39. To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like CrownCoinsCasino.com are unlicensed and unregulated. As one gambling treatment provider warned, "[u]nregulated platforms [like Crown Coins Casino] can pose significant risks for players struggling with gambling addiction. The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

40. For example, Crown Coins Casino accepts credit cards to pay for gambling on its website, in violation of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367. As a result, people have racked up massive debt gambling on CrownCoinsCasino.com.

41. The bottom line is that Crown Coins Casino lets people play online casino games and wager real money while defying this state's constitutional prohibition against gambling, offering inadequate player protections, exploiting adolescents, and siphoning revenue from this state.

42. In Ohio, it is illegal to operate and offer unlicensed, unregistered, and unapproved online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker. In this regard, Ohio has a fundamental and deep-rooted public policy against gambling.

## V. DEFENDANT CROWN COINS CASINO OPERATES A GAMBLING WEBSITE

43. Crown Coins Casino owns and operates a popular, casino-oriented internet gaming website called www.CrownCoinsCasino.com.

44. Crown Coins Casino previously operated a similar website to www.crowncoinscasino.com, called www.icasino.com. That website is no longer active.

45. Crown Coins Casino launched the new website, www.crowncoinscasino.com, in 2023.

46. Crown Coins Casino relies heavily on Instagram and other social media for advertising, bolstered with celebrity endorsements from American former professional boxer, Terrence Crawford. The Instagram profile for Crown Coins Casino website describes it as the "#1 Social Casino in America."



47. Online gambling websites like CrownCoinsCasino.com are fueling a steep rise in online gambling addiction, due in part to the easy access to gambling from any place with an Internet connection. Internet forums are awash with stories of people struggling with online gambling addiction generally, and CrownCoinsCasino.com specifically. The troubles they describe—massive losses, relationship troubles, suicidal thoughts—are age-old stories in the context of gambling.

48. Defendant's website includes a webpage warning users to monitor for signs of gambling addiction, and directs users in need of resources to gambling addiction organizations like Gaming Addicts Anonymous and the Financial Counseling Association of America. And yet at the same time, Crown Coins Casino gaslights its users, including vulnerable populations like minors and people struggling with gambling disorder, by claiming that the operation is a "legal sweepstakes" and does not involve "real-money gambling." Crown Coins Casino's claims that it offers a "legal sweepstakes" is a sham.

49. In short, Chance Games offered on the website are gambling, and they are no different than if they were played in a Las Vegas casino.

50. The website is accessible and made available to Ohio residents.

## VI. CROWN COINS CASINO HAS MASSIVELY SCALED UP AN OLD GIMMICK THAT CRIMINALS ONCE TRIED TO USE TO EVADE GAMBLING LAWS

51. Crown Coins Casino will ask the Court to disbelieve its own eyes and conclude that CrownCoinsCasino.com is not really a gambling operation, but instead offers legal "sweepstakes." That is an old gimmick that was once popular among criminals in the early 2000s.

52. As detailed below, courts and law enforcement agencies consistently determined that the same business model Crown Coins Casino utilizes today is a pretext for illegal gambling.

53. A federal district court has already held on summary judgment that one of Crown Coins' competitors that operates materially the same way is an illegal gambling operation. *See Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076 (W.D. Wash. 2024).

**A. <u>The Internet Café "Sweepstakes" Crime Trend Of The Early 2000's.</u>**

54. The early 2000s saw a nationwide crime trend where criminals attempted to evade gambling laws by offering gambling at so-called "Internet cafés." These operations—often located in suburban strip malls— "promoted" the sale of products such as Internet time or long-distance telephone minutes by offering "free" sweepstakes entries to customers. When customers purchased the product, they received a corresponding number of "sweepstakes" points for each dollar spent. Customers then used those sweepstakes points to play "casino-style" slot machine games for cash prizes at computer terminals provided at the Internet cafés.

55. Most states' gambling laws require three elements: prize, chance, and consideration. By artificially separating the consideration from the chance to win real money, criminals believed that they could evade state gambling laws, while claiming that the activities were no different from the sweepstakes promotions offered by Publisher's Clearing House and McDonalds.

56. Courts and state law enforcement officials in the United States repeatedly determined that such tactics were an obvious pretext and cover for illegal gambling.

57. For example, the Arkansas Supreme Court found that vending machines offering games of chance through promotional sweepstakes, even when

paired with the purchase of a nominal item, amounted to illegal gambling devices under Ark. Code Ann. § 5-66-104. *Pre-Paid Solutions, Inc. v. City of Little Rock*, 343 Ark. 317, 34 S.W.3d 360 (2001). Crucially, the sweepstakes format, where participants risk property for the opportunity to win additional rewards, meets the statutory definition of gambling under Ohio law. This precedent establishes that sweepstakes schemes designed to circumvent gambling laws are nevertheless unlawful, thereby supporting the claims against Crown Coins Casino and similar operations.

58. In Mississippi, an individual was convicted of racketeering and gambling charges in connection with an Internet café where—like here—customers could play simulated games that resembled gambling programs, such as slot machines, keno, and poker. *Moore v. State,* 309 So. 3d 7, 9 (Miss. Ct. App. 2020). Customers needed a "sweepstakes" code to play the game, but customers could not purchase a sweepstakes code outright. Instead, customers received sweepstakes codes by purchasing something else in the store, such as food or phone minutes.

59. The Alabama Supreme Court addressed the issue directly in *Barber v. Jefferson Cty. Racing Ass'n, Inc.,* 960 So.2d 599, 602-605 (2006), where the owners opened an "[I]nternet café" that offered a continuous "sweepstakes promotion" whereby customers could receive 100 entries for each dollar spent on computer access and Internet time. The Alabama Supreme Court rejected every argument for why this gimmick was not gambling—including the argument that there was "no consideration" for the entries because people were only buying Internet time, and because people had the option to obtain free chances by mail without purchasing Internet time. *See id.* at 612.

60. The outcome in *Barber* is consistent with the view taken by courts and law enforcement agencies across the country.

61. In 2015, the California Supreme Court addressed Internet café gambling in *People ex rel. Green v. Grewal*, 61 Cal. 4th 544 (2015), where the defendant sold Internet time on computer terminals. The defendant promoted the sale of Internet time and other products with a "sweepstakes" giveaway, wherein the defendant provided 100 "sweepstakes points" for each dollar spent, which could then be used to play games of chance. The defendants denied that the operation involved gambling because they were supposedly only selling computer time, and that the sweepstakes games were "not gambling" but instead a "promotional game." The Kern County District Attorney obtained a civil injunction for violations of California's gambling laws, and that injunction was affirmed on appeal.

62. In 2011, three individuals—including a Fall River, Massachusetts City Council member—were indicted and charged with various gaming charges in connection with the operation of two Internet cafés in Massachusetts. The defendants unsuccessfully argued that players were only paying for Internet time and that any gambling that occurred involved legitimate sweepstakes offers. The Massachusetts Attorney General stated unequivocally that this conduct constituted illegal gambling.

63. The Ohio Court of Appeals said it best when rejecting a similar sweepstakes scheme in *City of Cleveland v. Thorne*, 987 N.E.2d 731 (2013): "**the justice system is not some lumbering oaf who must ignore the patently obvious gambling scheme apparent here simply because of a contrived separation between consideration and the scheme of chance**." The court added, "there is no justification for ignoring the nature of the transaction simply because the system is designed in such a way as to artificially isolate one part of the illegal transaction from another. The justice system is not so blinded by chicanery."

**B. <u>Crown Coins Casino Is An Online Version Of An Internet Café.</u>**

64. Like the criminal Internet cafés in operation a decade ago, Defendant here attempts to separate the element of consideration from gambling by offering a two-tiered system of virtual coins, both of which function like casino chips.

65. The first type of virtual currency, called “Crown Coins,” can be used to play the casino games in “Crown Coins” mode with no potential to win money. When using Crown Coins, a player can only win or lose Crown Coins. However, for the most part, people only go to CrownCoinsCasino.com to engage in real-money gambling, so those Crown Coins are largely ignored.

66. The second type of virtual currency—called “Sweepstakes Coins”—can be used to play the same casino-style games in a “Sweepstakes Coins” mode, where they carry real monetary value and can be redeemed for cash and gift cards. To get Sweepstakes Coins, players typically must purchase them in a package with Gold Coins. Crown Coins Casino pretends that the “Sweepstakes Coins” are a “free” bonus added to the sale of Crown Coins, but as shown above, that is the same tactic Internet café owners unsuccessfully argued before when trying to artificially separate the element of consideration from the other elements of gambling.

67. There are two other problems with the notion that Sweepstakes Coins are just a “free” add-on bonus to the Crown Coins.

68. First, as noted above, most people ignore the Crown Coins after buying them.

69. Second, and more importantly, Sweepstakes Coins are a proxy for real money. Depending on the package bought, there is nearly 1:1 correlation between the number of dollars spent and the amount of Sweepstakes Coins provided in each purchase. If someone spends $9.99 dollars ostensibly to buy Crown Coins, they get 10 Sweepstakes Coins to use for gambling; whereas if they spend $49.99, they will get

52 Sweepstakes Coins, and so on:[4]




70. Likewise, Sweepstakes Coins are redeemable on a 1:1 basis. The $10,000 per day redemption limit underscores the large amounts of money being gambled on CrownCoinsCasino.com. There are several other factors that show that the true purpose of Defendant's website is gambling, and that like the Internet cafés that preceded the launch of Defendant's website, the use of the term "sweepstakes" is a pretext for gambling.

[4] Although Defendant offers a few Crown Coin packages that do not include Sweepstakes Coins, that is for show. Only a tiny fraction of website users, if any at all, purchase those packages because they do not allow users to engage in the primary purpose of the website, which is real-money gambling.

71. First, the casino-like atmosphere and imagery associated with the website is evidence that the true purpose of the website is to promote gambling, as opposed to a sweepstakes promotion of some other good or service.

72. Second, the duration of the "sweepstakes" promotion also demonstrates that the true purpose of the website is not to promote a bona fide consumer good or service, but instead gambling. A traditional sweepstakes promotion is a limited term event designed to attract consumer attention to a product or business, and ordinarily expires after a few weeks or months. In contrast, Defendant's purported "sweepstakes," runs perpetually.

73. Nor does Defendant's website comply with all of the sweepstakes requirements set by the Attorney General. PIF No. 10001626

74. Third, the typical payout percentage for a temporary promotional sweepstakes is a small percentage of revenue earned by the company. For example, the typical grand prize for McDonald's annual Monopoly-themed sweepstakes is usually about $1 million, which is a tiny fraction of the *billions* of dollars McDonald's earns each year. By contrast, casinos typically pay out between 80-96 percent of their revenues (sometimes referred to as the "return to player" or "RTP"). Upon information and belief, Defendant's RTP on its games is comparable to casinos payouts.

75. Fourth, conditions designed to keep customers playing longer are indicative that the true purpose of the website is to keep them gambling, rather than a true sweepstakes aimed at promoting a product or service. Unlike traditional sweepstakes games where prizes can be claimed immediately, Defendant imposes restrictions on prize redemption that can cause website visitors to play longer. Specifically, website visitors must have at least 50 Sweepstakes Coins to obtain gift cards and obtain cash. This forces consumers to continue gambling and eventually lose their balance.

76. Fifth, most if not all users of the website largely ignore their ample supply of Crown Coins in favor of playing with Sweepstakes Coins, which is a clear indication that Sweepstakes Coins, and not the supposedly promoted product (Crown Coins), are the primary subject of the transaction.

77. In short, Defendant is copying the Internet café playbook, but instead of selling Internet time, long-distance phone minutes, or small groceries coupled with supposedly "free" sweepstakes tokens, Defendant sells Crown Coins, which are then ignored so that players can use the Sweepstakes Coins for cryptocurrency gambling. The owners of a competitor gambling website that operates the same way as CrownCoinsCasino.com in all material respects, called ChumbaCasino.com, publicly admitted in a securities filing that social casino gaming websites like

> 67 Over the last 10 years, 'Internet Sweepstakes Cafes' have evolved and proliferated across the US. They operate as internet cafes that offer their customers entrance into a sweepstakes draw upon the purchase of a product, often internet time or telephone call minutes. The participant can find out whether they have won the pre-determined draw by a simple reveal but many choose to do so through a programme that simulates a slot machine or poker game. This may even include an online element, but neither the presentation nor their interaction affects the outcome of the draw.
>
> 68 Increasingly sweepstakes gaming has emerged out of these cafes, with consumer products allowing 'free' entrance into games in which cash prizes can be won in return.

CrownCoinsCasino.com are modeled after illegal Internet cafés:

78. The prospectus also explains how, at the time, "Internet sweepstakes Cafes are reported to have turned over $10bn (€9.4bn) in 2015, with over 5,000 now operating in 12 states" (Synergy Plus Limited, *Prospectus* at 69 (2016), https://announcements.asx.com.au/asxpdf/20160104/pdf/4345wkvqbww4kk.pdf) and described the "significant opportunity" of adopting the "sweepstakes café model." *Id.* at 95-96.

79. In sum, the parallels between Defendant's website and the Internet sweepstakes café business model—which courts have held are incontestably gambling—are clear:

- ✓ Both sell a "product" that comes with a commensurate number of "free" sweepstakes entries to play real money 'casino-style' games of chance in a 'casino-like' setting. Instead of the cafés selling a "prepaid phone card," Defendant sells a virtual gold coin.
- ✓ Both run sweepstakes games perpetually and not on a limited and occasional basis, as is typical with legitimate promotional sweepstakes like the McDonald's monopoly sweepstakes.
- ✓ Both offer casino-like payouts, typically 90% or more of revenues, whereas legitimate promotional sweepstakes normally have very low prize to entrant ratios.
- ✓ Both offer several ways to get free entries without requiring a product purchase, such as by mailing a postcard to a designated P.O. Box address, although the number of free entries awarded through this method is a very low amount, if anything at all.

80. Moreover, Crown Coins Casino does not offer free-play tokens at stores or other locations across the state of Ohio.

81. Crown Coins Casino does not operate for a fixed duration to promote or market a product or service, CrownCoinsCasino.com operates indefinitely and *is* the product or service.

### C. <u>Crown Coins Casino Promotes Gambling To Underage Minors.</u>

82. The National Institute of Health reports that "despite its illegality among adolescents, online gambling is a common practice, which puts their mental health and well-being at serious risk." J. Behav. Addict., 2021 Sept. 16;10(3):566-586. Some research indicates a "greater addictive potential of online gambling over

traditional gambling, especially for young problem gamblers." This general vulnerability is due to the developmental characteristics of adolescence, where individuals are more likely to engage in risky behaviors and develop addiction problems due to immature self-regulation capacity, impulsivity, external locus of control, and susceptibility to contextual factors. *See id.* "They may be lured by the pop-up gambling advertisements, offers of gifts and free play, tempting easy win messages, thrill of many online games, and visually exciting graphics and photos presented with the games." *Id.*

83. The lower the age of online gambling onset, the higher the probability of developing problematic online gambling and the more severe the psychosocial consequences are.

84. According to a 2024 University of Michigan national poll on children's health, nearly a third of U.S. parents say that they or another adult in their household have participated in gambling. Among those households, two-thirds reported that their teen has a bank account or credit card in their own name, and one in six admitted they would not know if their own child was betting online.

85. Crown Coins Casino is exploiting this phenomenon for profit.

### D. Crown Coins Casino Misleads The Public With False Claims Of Legality.

86. Crown Coins Casino also engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing confusion that participation on CrownCoinsCasino.com is legal in Ohio.

87. In its terms of service, Crown Coins Casino states:

> Only persons located in the United States (excluding Idaho, Louisiana, Michigan, Montana, Nevada, California, Washington and any outlying U.S. territories and possessions) are permitted to register a User Account on the Platform.

88. Crown Coins Casino does not include Ohio as an excluded territory, although online gambling in any form is strictly prohibited by the State of Ohio.

## VII. ALL PURPORTED CONTRACTS WITH CROWN COINS CASINO NEVER EXISTED, INCLUDING THE PURPORTED ARBITRATION PROVISION AND ITS DELEGATION CLAUSE

89. The only consideration paid by Plaintiff and the Class members was wagers to gamble.

90. In Ohio, "[a]ll promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void."

91. Thus, no contract was ever formed between the parties, and any purported contract between himself and Defendant, and any contractually based defenses Defendant may raise are likewise void.

92. Even if not void, they are unconscionable as the terms and conditions is an adhesion contract.

93. Plaintiff and Class members had no opportunity to negotiate the contract terms, and the terms never changed for any Class member.

94. Plaintiff and Class members had *zero* bargaining power.

95. Plaintiff and Class members could not have used CrownCoinsCasino.com unless they agreed to the terms of service, and they could not have obtained comparable products or services unless they agreed to arbitrate or affirmatively opted out of Crown Coins Casino's arbitration clause within 30 days of signing up.

96. The terms of service also unconscionably limit Plaintiff's and Class members' damages, and do not afford them an opportunity to select or have a say in the arbitrator(s).

97. Moreover, the scope of the arbitration agreement is too large, covering every single claim against every single party, known or unknown.

98. The inclusion of a class action waiver is also unconscionable as the only practical effect is to chill or prevent claims, affording Crown Coins Casino immunity.

99. Moreover, the expenses and forum are unfair and unconscionable, as the cost to pursue individual arbitration likely exceeds the reward, further chilling and preventing claims and affording Crown Coins Casino immunity.

100. In sum, Plaintiff and Class members paid to forgo everything – inability to protect their statutory and constitutional rights – and Crown Coins Casino gains immunity at no cost. Plaintiff and Class members were not given a *quid pro quo* for agreeing to arbitrate and forgoing their constitutional right to a trial by jury.

101. Moreover, Plaintiff and Class members were fraudulently induced into entering these contracts. Crown Coins Casino misrepresented that CrownCoinsCasino.com was legal in Ohio, on which Plaintiff and Class members relied. Had Crown Coins Casino disclosed the truth that CrownCoinsCasino.com is not legal in Ohio, Plaintiff and Class members would not have entered into the contract with Crown Coins Casino.

102. Finally, the contract is illusory since Crown Coins Casino reserves the right to change the terms at any time without prior notice.

## VIII. CLASS ACTION ALLEGATIONS

103. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

104. The Plaintiff seeks to represent the following Ohio Classes ("Class") defined as:

> All persons in Ohio who have paid money or other things of value on CrownCoinsCasino.com.

105. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

106. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

107. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiff is informed and believes that there are hundreds to thousands of members of the Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

108. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's alleged conduct violates applicable law;

c. Whether CrownCoinsCasino.com is illegal gambling in Ohio;

d. Whether Plaintiff and Class members wagered and lost money or other things value on CrownCoinsCasino.com in Ohio;

e. The amount of money or other things of value wagered and lost by Plaintiff and Class members in Ohio;

f. Whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

g. The amount and nature of relief to be awarded to Plaintiff and the other Class members.

109. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the Class members wagered and lost money or other things of value on CrownCoinsCasino.com in Ohio. Also, neither Plaintiff nor the other Class Members would have participated on CrownCoinsCasino.com had Defendant not engage in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. Plaintiff and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

110. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class that he seeks to represent, Plaintiff retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

111. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

112. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the Class members to individually seek redress. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

113. **Ascertainability –** Crown Coins Casino maintains a robust database with all its participants. Each participant must create an account to participate and must select and verify which state they are from. Crown Coins Casino also assigns each participant's account an individually identifiable number, and Crown Coins Casino tracks winning and losses, because it controls how much a player can wager and cashout a day.

## IX. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT
### 28 U.S.C. §§2201 *et seq.*

114. Plaintiff incorporates by reference the allegations contained in the above paragraphs.

115. Plaintiff brings this count individually and on behalf of all other Class members.

116. Ohio law heavily regulates and outlaws most forms of gambling.

117. In Ohio, gambling is defined as "hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk."

118. In Ohio, a game is chance-based, not skill-based, when more chance is involved in the outcome than skill.

119. Crown Coins Casino operates an illegal gambling website (CrownCoinsCasino.com) wherein participants pay consideration for the chance to win a prize.

120. The Chance Games offered by Crown Coins Casino are predominantly games of chance and do not involve any level of skill.

121. The prizes Crown Coins Casino offers are valuable and can be used as or converted into US currency.

122. Crown Coins Casino operates an online casino, not a sweepstakes. In Ohio, even though the player is assured of his money's worth of some commodity and hence cannot lose, it is still illegal gambling. In fact, even paying back up to 98% of all money played is illegal gambling (where the typical sweepstakes payout is 50%). And the duration of traditional sweepstakes is limited, not indefinite, like CrownCoinsCasino.com. And just because Plaintiff and Class members can play for free does not save CrownCoinsCasino.com. The Ohio courts have long held that the availability of free chances is not necessarily dispositive of whether the game is a gambling scheme: *Freedom Concepts, Inc. v. Ohio Liquor Control Comm'n*, 2003-Ohio-4686 (holding that a free game did not change the fact that the player was paying for a chance to win a prize, making the machine a gambling device). Moreover, Crown Coins Casino does not promote or market a good or service, it is the good or service. And Crown Coins Casino does not offer any free-play tokens available at any location in Ohio.

123. Plaintiff and Class members each paid money or other things of value to Crown Coins Casino to play the Chance Games for the sole purpose of winning a prize (gift cards or cryptocurrency).

124. Plaintiff and Class members seek an order declaring that (1) CrownCoinsCasino.com is illegal gambling in Ohio and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Crown Coins Casino from operating CrownCoinsCasino.com in Ohio, with disgorgement of profits.

125. Plaintiff and Class members also seek a speedy declaratory judgment hearing pursuant to Fed. R. Civ P. 57.

## SECOND CAUSE OF ACTION
## OHIO GAMBLING LOSS RECOVERY STATUTE
## Ohio Rev. Code Ann § 3763.02, *et seq.*

126. Plaintiff incorporates by reference the allegations contained in the above paragraphs.

127. Plaintiff brings this count individually and on behalf of all other Class members.

128. Plaintiff is similarly situated as other Class members, as each are Ohio residents who have either paid and lost money or other things of value on CrownCoinsCasino.com or are the spouse, child, or next of kin of an Ohio resident who paid and lost money or other things of value on CrownCoinsCasino.com.

129. Crown Coins Casino operates an illegal gambling website that is accessible in Ohio.

130. Plaintiff and other Class members paid and lost money or other things of value to Crown Coins Casino on CrownCoinsCasino.com.

131. Plaintiff and other Class members demand recovery of the money or other things of value paid and lost to Crown Coins Casino on CrownCoinsCasino.com in an amount to be determined at trial, including interest.

132. Plaintiff also seeks recovery of money or other things paid and lost on CrownCoinsCasino.com on behalf of the spouses, children, and next of kin of the losers.

133. Plaintiff and Class members also seek an order declaring that (1) CrownCoinsCasino.com is illegal gambling in Ohio and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Crown Coins Casino from operating CrownCoinsCasino.com in Ohio, with disgorgement of profits.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
## OHIO REV. CODE ANN 1345.01, *et seq.*

134. Plaintiff incorporates by reference the allegations contained in the above paragraphs.

135. Plaintiff brings this count individually and on behalf of all other Class members pursuant to Ohio Rev. Code Ann. § 1345.01.

136. Defendant, Plaintiff, and Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 1345.01.

137. Plaintiff and Class members are "consumers" and their use of the change games on CrownCoinsCasino.com are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01.

138. The Ohio Consumers Sales Practices Act (CSPA), Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions, such as those described herein.

139. The CSPA also provides a non-exhaustive list of unconscionable acts or practices, including but not limited to:

a. Representing "the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have." Ohio Rev. Code Ann. § 1345.02(B)(1)
b. Representing "the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code Ann. § 1345.02(B)(2).
c. Advertising "[t]hat the subject of a consumer transaction is available to the consumer for a reason that does not exist." Ohio Rev. Code Ann. § 1345.02(B)(4);
d. Representing "the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not." Ohio Rev. Code Ann. § 1345.02(B)(5); and
e. Representing "the supplier has a sponsorship, approval, or affiliation that the supplier does not have." Ohio Rev. Code Ann. § 1345.02(B)(9).

140. As alleged herein, Defendant violated CPSA by engaging in unfair and deceptive trade practices.

141. Namely, Defendant misrepresented or caused confusion or misunderstanding that gambling on CrownCoinsCasino.com is legal and approved or certified by the Crown Coins Casino, when in fact it is illegal gambling in Ohio.

142. Defendant further violated the CSPA by representing that the goods or services are of a particular standard and legal in Ohio, when in fact gambling is illegal in Ohio.

143. Defendant further violated the CSPA by representing, implying, and/or failing to disclose that its goods or services are illegal in Ohio, which is an unconscionable, false, misleading, and/or deceptive act and/or business practice.

144. Other unconscionable, false, misleading, and/or deceptive act and/or business practice employed by Defendant include:

a. deceiving or confusing customers into believing that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are prohibited by law; and

b. representing that the website users will receive an economic benefit (in the form of gambling winnings), when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

145. To the extent required by law, Defendant owed a duty to Plaintiff and the Class because disclosure that participation on its website is illegal was necessary to dispel misleading impressions that participation on Defendant's website was legal.

146. Defendant's unfair or deceptive acts or practices were likely to, and did, in fact, deceive Plaintiff and Class members about the true approval, certification, and legality of its goods or services.

147. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

148. Defendant acted with knowledge and intent to deceive.

149. Plaintiff and Class members suffered ascertainable losses and actual damages as a direct result of Defendant's conduct. Plaintiff and other Class members would not have participated on CrownCoinsCasino.com had Defendant disclosed the true nature of CrownCoinsCasino.com.

150. Ohio courts and the attorney general have deemed other sweepstakes that operate like Defendant to be illegal and violative of the CSPA:

a. In *State ex rel. Celebrezze v. Howard*, 77 Ohio App. 3d 387, 393, 602 N.E.2d 665, 669 (1991) the court held that anything "categorized as gambling or an award by chance" "plac[es] it squarely within the CSPA." *See also* PIF No. 10001056; *State ex rel. Montgomery v. Purchase Plus Buyer's Grp., Inc.*, 2002-Ohio-2014.

b. The attorney general has also deemed sweepstakes or prize contests illegal unless they, among other things, "promote the sale of a bona fide good or service." PIF No. 10001626.

151. Pursuant to Ohio Rev. Code Ann § 1345.09, Plaintiff and the Class members seek an order enjoining Defendant's unfair and/or deceptive acts or practices and awarding damages (actual or statutory, whichever is greater), including punitive damages, and any other just and proper relief available under the CSPA.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B. Declaring that CrownCoinsCasino.com is illegal gambling in Ohio and that any authority under which it purports to operate is not Constitutional;

C. Enter a permanent injunction permanently enjoining Defendant from operating CrownCoinsCasino.com in Ohio;

D. Ordering Defendant to refund all wages lost by the Class and pay actual and statutory damages (including punitive damages) and restitution and disgorgement of profits to Plaintiff and the Class, as allowable by law;

E. Ordering Defendant to pay both pre- and post-judgment interest on any amount awarded;

F. Ordering Defendant to pay attorneys' fees and costs of suit; and

G. Ordering such other and further relief as the Court may deem just, equitable, and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 27, 2026

Respectfully submitted,

By: */s/ Alyson Steele Beridon*
Alyson Steele Beridon (0087496)
Trial Attorney
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
600 Vine Street, Suite 2720
Cincinnati, Ohio 45202
Phone: (513) 381-2224
Fax: (615) 994-8625
Email: alyson@hsglawgroup.com

Benjamin A. Gastel*
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
1920 Adelicia Street, Suite 300
Nashville, TN 37212
Phone: (615) 800-6225
Fax: (615) 994-8625
Email: ben@hsglawgroup.com

W. Daniel "Dee" Miles, III*
James Mitchell "Mitch" Williams*
Dylan T. Martin*
Trenton H. Mann*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160

(334) 269-2343
(334) 954-7555 FAX
dee.miles@beasleyallen.com
mitch.williams@beasleyallen.com
dylan.martin@beasleyallen.com
Trent.mann@beasleyallen.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith*
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

***Attorneys for Plaintiff and the Class***

****Pro Hac Vice forthcoming***