**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CINCINNATI**

CHRIS DROLLINGER, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

SUNFLOWER LIMITED and SUNFLOWER TECHNOLOGY INC., d/b/a CrownCoinsCasino.com,

*Defendants*.

Case No. 1:26-cv-00210-JPH

Judge Jeffery P. Hopkins
Magistrate Judge Karen L. Litkovitz

**DEFENDANTS SUNFLOWER LTD. AND SUNFLOWER TECHNOLOGY, INC.'S**
**REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

A. Plaintiff Cannot Avoid His Arbitration Agreement by Challenging the Legality of the Terms, Which Is a Matter for the Arbitrator to Decide ..... 2

B. Courts Have Repeatedly Rejected Materially Identical Voidness-for-Illegality Challenges in Identical Cases, and Plaintiff Has No Answer to this Authority ..... 5

C. Plaintiff's Reliance on *Wolters* Is Not Persuasive ..... 6

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot v. Boom Shakalaka, Inc.*,
No. 1:25-cv-12004, 2026 WL 2139019 (N.D. Ill. July 24, 2026) ........................................6, 9

*Anderson v. ARB Gaming, LLC*,
No. 6:25-cv-02069-AP, 2026 WL 2064482 (D. Or. June 24, 2026) ........................................6

*Bailey v. Ameriquest Mortg. Co.*,
346 F.3d 821 (8th Cir. 2003) ........................................................................................7

*Becker v. Delek US Energy, Inc.*,
39 F.4th 351 (6th Cir. 2022) ........................................................................................4

*Benchmark Ins. Co. v. SUNZ Ins. Co.*,
36 F.4th 766 (8th Cir. 2022) ........................................................................................7

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020) ........................................................................................10

*Boyle v. Sweepsteaks Ltd.*,
No. 8:25-cv-00302-JVS-ADS, 2025 WL 1674480 (C.D. Cal. May 19, 2025) .........................8

*Brown v. Santander Consumer USA Inc.*,
No. 3:24-CV-00665-NJR, 2025 WL 2280559 (S.D. Ill. Aug. 8, 2025) ...................................4

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)........................................................................................... *passim*

*U.S. ex rel. Coastal Roofing Co., Inc. v. P. Browne & Assocs., Inc.*,
585 F. Supp. 2d 708 (D.S.C. 2007)...............................................................................10

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024).................................................................................................3, 4

*Earle v. BLST Sales, Mktg. & Serv., LLC*,
No. 24-cv-8983, 2025 WL 2170146 (D.N.J. July 31, 2025) ....................................................4

*Hall v. Sweepsteakes Ltd.*,
No. 3:25-cv-345-RAH, 2026 WL 701560 (M.D. Ala. Mar. 12, 2026)..................................8, 9

*Harris v. ARB Gaming LLC*,
No. 25-cv-12129, 2026 WL 2098956 (N.D. Ill. July 21, 2026) ..............................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................9

*Hines v. Nat'l Ent. Grp. LLC*,
140 F.4th 322 (6th Cir. 2025) ....................3, 9

*Johnston v. VGW Holdings Ltd.*,
No. 3:25-cv-653-RAH, 2026 WL 699708 (M.D. Ala. Mar. 12, 2026)....................9

*Lackie Drug Store, Inc. v. OptumRx, Inc*.,
143 F.4th 985 (8th Cir. 2025) ....................3

*M.M. v. Sweepsteakes Ltd.*,
No. 1:25-cv-11481-RGS, 2025 WL 3240413 (D. Mass. Nov. 20, 2025)....................8

*M.M. v. VGW US, Inc.*,
No. 25-cv-10514-DJC, 2026 WL 34452 (D. Mass. Jan. 6, 2026) ....................9

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*,
383 F.3d 512 (6th Cir. 2004) ....................2

*McLeod v. Gen. Mills, Inc*.,
856 F.3d 1160 (8th Cir. 2017) ....................7

*McMurray v. AT&T Mobility Servs., LLC*,
No. 21-414, 2021 WL 3293540 (D. Minn. Aug. 2, 2021)....................8

*Negron v. Frank & Woolridge Co.*,
No. 1:24 CV 02132, 2025 WL 843758 (N.D. Ohio Mar. 18, 2025)....................10

*Ode v. Anheuser-Busch, LLC*,
No. 4:19-cv-00233-WMR, 2020 WL 5405666 (N.D. Ga. Aug. 19, 2020)....................5

*Parm v. Bluestem Brands, Inc.*,
898 F.3d 869 (8th Cir. 2018) ....................7

*Preston v. Ferrer*,
552 U.S. 346 (2008)....................2

*Ranazzi v. Amazon.com, Inc.*,
46 N.E.3d 213 (Ohio Ct. App. 2015)....................9

*Ridley v. Sweepsteaks Ltd.*,
No. 1:25-cv-2511 (LMB), 2026 WL 2201149 (E.D. Va. July 30, 2026) ....................6, 8

*S.T.G. v. Epic Games, Inc.*,
752 F. Supp. 3d 1200 (S.D. Cal. 2024)....................3

*Sleeper Farms v. Agway, Inc.*,
506 F.3d 98 (1st Cir. 2007) .......... 10

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) .......... 1, 4

*Taylor v. Sunrun Inc.*,
No. JKB-25-1381, 2025 WL 2402760 (D. Md. Aug. 19, 2025) .......... 4

*Winter v. Window Fashions Pros., Inc.*,
166 Cal. App. 4th 943 (2008) .......... 5

*Wolters v. Sweepsteaks Ltd.*,
No. 25-3280, 2026 WL 1894240 (D. Minn. July 1, 2026) .......... *passim*

## PRELIMINARY STATEMENT

Plaintiff does not dispute that he affirmatively accepted the Terms, including the arbitration agreement, which delegates all questions of arbitrability to the arbitrator. As expected, however, Plaintiff argues that he should be excused from his agreement to arbitrate because he alleges that the Terms are a void gambling contract under Ohio law. Plaintiff's argument is foreclosed by *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), which held that a plaintiff cannot avoid arbitration by challenging the underlying contract as void for illegality under state law.

While Plaintiff attempts to evade the well-established *Buckeye* rule by claiming that his voidness challenge is directed "specifically" to the arbitration agreement, this Court "must look to the ***substance*** of the challenge," not the phrasing Plaintiff now strategically uses to try to avoid his arbitration agreement. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021) (emphasis added). The substance of Plaintiff's challenge is that the Terms in their entirety—including the arbitration provisions—are a void gambling contract under Ohio law. In fact, that is the premise of Plaintiff's ***entire case***—that Sunflower's Games allegedly are unlawful gambling. That puts this case squarely within *Buckeye*. Accordingly, as courts in this Circuit and elsewhere have repeatedly held, including in multiple cases that Plaintiff's counsel has brought against other casino-themed game companies, Plaintiff's voidness challenge is for the arbitrator, not this Court.

Plaintiff has no answer to these authorities. That is why Plaintiff ignored ***all*** the cases cited in Sunflower's opening brief compelling arbitration under identical circumstances. Instead, Plaintiff bases his entire opposition on a single unreported, out-of-circuit decision from a Minnesota federal district court, *Wolters v. Sweepsteaks Ltd.*, No. 25-3280 (JRT/JFD), 2026 WL 1894240 (D. Minn. July 1, 2026), which is currently on appeal and is likely to be reversed by the Eighth Circuit. *Wolters* is a lone outlier in what is otherwise an ocean of authority—including from

within this Circuit—correctly applying the *Buckeye* severability rule, rejecting materially identical challenges to arbitrability, and compelling arbitration in identical cases. This Court should follow binding Supreme Court and Sixth Circuit precedent, not a lone trial court decision from Minnesota.

## ARGUMENT

### A. Plaintiff Cannot Avoid His Arbitration Agreement by Challenging the Legality of the Terms, Which Is a Matter for the Arbitrator to Decide

*Buckeye* disposes of Plaintiff's opposition. There, the Supreme Court answered the question: "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." 546 U.S. at 442. The Court held that where, as here, the plaintiff's challenge is that "the contract as a whole (including its arbitration provision) is rendered invalid" due to alleged illegality, "the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 444-46; *see also Preston v. Ferrer*, 552 U.S. 346, 352-54 (2008) (plaintiff's claim that contract violated state statute and was void *ab initio* was for arbitrator, not court); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 516 (6th Cir. 2004) (rejecting argument that "arbitration clause is unenforceable because the agreement as a whole is void pursuant to a statute"). Indeed, the Supreme Court made clear in *Buckeye* that the enforceability of an arbitration agreement governed by the FAA does ***not*** "turn on '[state] public policy and contract law'" (546 U.S. at 446), and the FAA ***requires*** courts to "enforce an arbitration agreement in a contract that the arbitrator later finds to be void" (*id*. at 448).

Here, Plaintiff makes clear both in his Complaint and in his opposition to this motion that he is challenging the ***Terms in their entirety*** as void for alleged illegality under Ohio law. Plaintiff's theory—in his own words—is that the "***the Terms and Conditions are void***," and so the "arbitration provision necessarily fails too." Opp'n, ECF No. 21 at PageID 169 (emphasis added); *id.* at PageID 171 ("The Terms of Service here are unenforceable under Ohio law because they are

a contract to engage in illegal gambling conduct."); *id*. at PageID 174 ("Because the Terms of Service are void under Ohio law as a contract to engage in illegal gambling, the delegation provision that hinges on their validity is likewise void and cannot be enforced."); Compl., ECF No. 1 at PageID 19 ¶ 91 ("[A]ny purported contract between [Plaintiff] and [Sunflower]" is "void"). This is precisely the kind of challenge that, under *Buckeye*, is for the arbitrator to resolve.

Plaintiff tries to circumvent the *Buckeye* rule by arguing that, under *Coinbase*, his voidness-for-illegality challenge is for this Court to decide because it is a challenge that applies "equally" to the Terms as a whole and to the arbitration provisions. Opp'n, ECF No. 21 at PageID 174 (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024)). Plaintiff misreads *Coinbase*, which involved a unique factual scenario where "the parties had two contracts: one mandating arbitration—including disputes about arbitrability—and a separate contract designating California courts as the appropriate forum." *Lackie Drug Store, Inc. v. OptumRx, Inc*., 143 F.4th 985, 998 (8th Cir. 2025). "Thus, the Supreme Court had to decide '[w]hat happens if parties have multiple agreements that conflict as to . . . who decides arbitrability,' and held that, 'before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls.'" *Id*.; *see also S.T.G. v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1210 (S.D. Cal. 2024) ("The *Coinbase* decision is a narrow one. It holds only that where 'parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs.'") (citation omitted). That is not the situation here.

Moreover, *Coinbase* did not modify, but rather reaffirmed the holdings of *Buckeye* and *Rent-A-Center* that "a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole." *Coinbase*, 602 U.S. at 150-51; *see also Hines*

*v. Nat'l Ent. Grp. LLC*, 140 F.4th 322, 333 (6th Cir. 2025) (post-*Coinbase*, "challenges to the validity of the [contract] are" still "severable and 'must go to the arbitrator'"); *Earle v. BLST Sales, Mktg. & Serv., LLC*, No. 24-cv-8983, 2025 WL 2170146, at *5 (D.N.J. July 31, 2025) (rejecting plaintiff's argument that *Coinbase* permitted her to avoid arbitration by challenging the contract, including the arbitration provision, as void because "[p]laintiff argues that the entire contract is void and therefore unenforceable, rather than attacking its formation"); *Brown v. Santander Consumer USA Inc.*, No. 3:24-CV-00665-NJR, 2025 WL 2280559, at *9 (S.D. Ill. Aug. 8, 2025) ("[Plaintiff] argues that she is not bound by [the arbitration agreement] because the contracts to which it applies are void under state law. *That* issue is subject to the severability principle under *Buckeye*—a decision that *Coinbase* did not modify."). Indeed, as another court succinctly put it:

> [W]hile a court must consider challenges that apply "equally" to an arbitration provision and a whole contract, it need do so only when the alleged defect originates in the arbitration provision and infects the rest of the agreement, not the other way around. Otherwise, if an issue originates elsewhere in the agreement (or with the agreement as a whole) and only secondarily affects the arbitration clause, it is a merits question reserved for arbitration.

*Taylor v. Sunrun Inc.*, No. JKB-25-1381, 2025 WL 2402760, at *6 (D. Md. Aug. 19, 2025).

In evaluating whether Plaintiff's voidness challenge here is directed to the Terms in their entirety or the arbitration agreement specifically, this Court "must look to the ***substance*** of the challenge." *In re StockX*, 19 F.4th at 885 (emphasis added). Plaintiff "must 'show that ***the basis of [his] challenge*** is directed specifically to the'" arbitration agreement, and not to the Terms in their entirety. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (emphasis in original) (quoting *In re StockX*, 19 F.4th at 886). Plaintiff "fails to make this showing" because his purported invalidity challenge to the arbitration agreement "'recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole.'" *Id*. (quoting *In re StockX*, 19 F.4th at 886).

Plaintiff's cases—*Ode v. Anheuser-Busch, LLC*, No. 4:19-cv-00233-WMR, 2020 WL 5405666 (N.D. Ga. Aug. 19, 2020), and *Winter v. Window Fashions Pros., Inc.*, 166 Cal. App. 4th 943 (2008)—provide an instructive contrast and further highlight why Plaintiff's voidness challenge is for the arbitrator, not this Court. *See* Opp'n, ECF No. 21 at PageID 175. In *Ode*, the plaintiffs specifically challenged the arbitration agreement and delegation provision on the ground that they were ***not even parties to the arbitration agreement***. 2020 WL 5405666, at *5. Similarly, the plaintiffs in *Winter* specifically challenged the arbitration provision on the ground that "they ***never agreed to the arbitration clause at all***." 166 Cal. App. 4th at 949 (emphasis added). Unlike in *Ode* and *Winter*, Plaintiff here ***does not dispute*** that he accepted the arbitration agreement.

As discussed above, Plaintiff argues that the Terms are entirely void under Ohio law. Under Plaintiff's (misguided) theory, the only reason why the arbitration agreement is unenforceable is that the Terms in their entirety are void. *See supra* at 2-3. Accordingly, because the ***substance*** of Plaintiff's challenge is that the Terms "as a whole (including its arbitration provision) is rendered invalid" due to alleged illegality, that challenge is for the arbitrator. *Buckeye*, 546 U.S. at 440.

**B. Courts Have Repeatedly Rejected Materially Identical Voidness-for-Illegality Challenges in Identical Cases, and Plaintiff Has No Answer to this Authority**

Applying the well-established principles discussed above, courts in this Circuit and elsewhere have repeatedly held in ***identical*** cases that plaintiffs cannot avoid their arbitration agreements with casino-themed social game companies by alleging that their terms of service—including the arbitration agreements and delegation provisions within them—are void gambling contracts. Sunflower cited numerous such cases in its opening brief. Opening Br., ECF No. 15-1 at PageIDs 92-93 (citing cases). Plaintiff ignored all of those cases—because he has no answer.

Since Sunflower filed its opening brief, courts have continued to reject the same voidness-for-illegality challenges and compel arbitration in yet more identical cases against casino-themed

game companies. *See*, *e.g.*, *Harris v. ARB Gaming LLC*, No. 25-cv-12129, 2026 WL 2098956, at *5 (N.D. Ill. July 21, 2026) (where plaintiff argued "that 'the illegality defect applies equally to the arbitration provision and the contract as a whole,'" that was a challenge that went to "the Terms of Use as a whole" and "must be left for the arbitrator"); *Abbot v. Boom Shakalaka, Inc.*, No. 1:25-cv-12004, 2026 WL 2139019, at *6 (N.D. Ill. July 24, 2026) ("Plaintiff's argument that the arbitration agreement is unenforceable because Boom Fantasy's TOS are void because it is based on money or value obtained through illegal gambling fails" under *Buckeye*); *Anderson v. ARB Gaming, LLC*, No. 6:25-cv-02069-AP, 2026 WL 2064482, at *12 (D. Or. June 24, 2026) ("To the extent that Plaintiff is arguing that because gambling is illegal, the contract—including the arbitration provision—is void, the Supreme Court has made clear that an arbitration provision is severable from the contract itself and when the 'crux of the complaint is that the contract as a whole[ ] is rendered invalid,' that is an issue for the arbitrator in the first instance.") (quoting *Buckeye*, 546 U.S. at 446), *report and recommendation adopted*, 2026 WL 2059763 (D. Or. July 16, 2026); *Ridley v. Sweepsteaks Ltd.*, No. 1:25-cv-2511 (LMB), 2026 WL 2201149, at *6 (E.D. Va. July 30, 2026) ("[T]he Court rejects plaintiffs' delegation clause challenges, and their arguments that Stake's Terms are void *ab initio* because they create an illegal gambling contract.").

Plaintiff would have this Court believe that ***all*** these courts are wrong and that *Wolters*, a lone outlier against the overwhelming weight of authority, got it right. Plaintiff is incorrect.

### C. Plaintiff's Reliance on *Wolters* Is Not Persuasive

Plaintiff's opposition asks this Court to ignore settled severability precedent from the Supreme Court and Sixth Circuit, and instead follow *Wolters*, a single unreported district court decision from Minnesota in which the court denied another company's motion to compel arbitration based on a misapplication of the *Buckeye* severability principle. Opp'n, ECF No. 21 at

PageIDs 169-71. *Wolters* is on appeal before the Eighth Circuit and is likely to be reversed. In fact, the same judge who decided *Wolters* has been reversed by the Eighth Circuit, repeatedly, for failing to follow Supreme Court and Eighth Circuit precedent on motions to compel arbitration, including in another case challenging a contract as void. *See*, *e.g.*, *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 772 (8th Cir. 2022) (reversing denial of motion to compel arbitration because alleging that the contract is "void" is "a challenge to the contract's validity that, under *Buckeye*, shall be considered by an arbitrator, not a court"); *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018); *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1166 (8th Cir. 2017); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 822 (8th Cir. 2003). *Wolters*, too, ran afoul of Supreme Court precedent.

In *Wolters*, the plaintiff argued "that the Arbitration Agreement is invalid because the entire Terms and Conditions are invalid" as a void gambling contract under Minnesota law. 2026 WL 1894240 at *3. The court acknowledged that this challenge was "similar, on its face, to the type of attacks on arbitration agreements that are foreclosed by *Buckeye*." *Id*. However, the court concluded that the voidness challenge was directed to the arbitration agreement "itself," rather than to the terms in their entirety, because the arbitration agreement stated: "**By agreeing to these Terms and Conditions**, both you and Stake agree" to arbitrate. *Id*. (emphasis in original). The court interpreted the bolded language to mean "the parties' assent to arbitrate certain claims is **contingent** on the existence and validity of the 'Terms and Conditions.'" *Id*. (emphasis in original).

But *Wolters*' analysis was flawed because the arbitration agreement there—much like the arbitration agreement here—expressly contemplated that there could be challenges to the "existence" and "validity" of the terms, and it delegated all such challenges to the arbitrator. *Id*.; *see also* Opening Br., ECF No. 15-1 at PageID 87 (Plaintiff here agreed to arbitrate all disputes "arising out of or relating to these Terms of Service, the Platform, the formation of these Terms of

Service, our relationship or any other dispute between you and Sunflower"); *id*. at PageID 90 (Plaintiff here agreed that arbitration would be conducted under the JAMS Rules, which state that all "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator"). Given that the *Wolters* plaintiff retained the right to challenge the "existence" and "validity" of the terms in arbitration, his agreement to arbitrate was, by definition, ***not*** "contingent" on the terms being valid—*Wolters* did not even address, much less reconcile, this fundamental flaw in its reasoning.

Moreover, the arbitration provision in *Buckeye* began with nearly identical language to that in *Wolters*: "***By signing this Agreement***, you agree" to arbitrate. 546 U.S. at 442 (emphasis added). Yet the Supreme Court still concluded the plaintiff's illegality challenge—which asserted that the contract, arbitration provisions and all, was "criminal on its face" (*id*. at 443)—was for the arbitrator because it was "a challenge to the validity of the contract as a whole" (*id*. at 449). Unsurprisingly, other courts that considered the ***same*** arbitration agreement that was at issue in *Wolters* concluded—correctly and consistent with *Buckeye*—that plaintiffs were required to arbitrate their claims that the company's games were unlawful and the terms were void. *See Hall v. Sweepsteakes Ltd.*, No. 3:25-cv-345-RAH, 2026 WL 701560, at *1, *4 (M.D. Ala. Mar. 12, 2026); *M.M. v. Sweepsteakes Ltd.*, No. 1:25-cv-11481-RGS, 2025 WL 3240413, at *1-2 (D. Mass. Nov. 20, 2025); *Boyle v. Sweepsteaks Ltd.*, No. 8:25-cv-00302-JVS-ADS, 2025 WL 1674480, at *1, *5-6 (C.D. Cal. May 19, 2025); *Ridley*, 2026 WL 2201149, at *3-4, *6. *Wolters* is the outlier.

Further, *Wolters* failed to acknowledge that, notwithstanding the plaintiff's allegation that the terms were a void gambling contract under Minnesota law, the ***arbitration agreement*** was a severable contract supported by its own independent, valid consideration in the form of the parties' mutual promise to arbitrate. *See*, *e.g.*, *McMurray v. AT&T Mobility Servs., LLC*, No. 21-414

(DWF/DTS), 2021 WL 3293540, at *5 (D. Minn. Aug. 2, 2021) (mutual promise to arbitrate is valid consideration for an arbitration agreement under Minnesota law). The same is true here under Ohio law. *See Hines*, 140 F.4th at 334 (under Ohio law, the "arbitration clause, considered in isolation, is supported by adequate consideration based on a 'mutuality of promises' to arbitrate"); *see also Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 219 (Ohio Ct. App. 2015) ("[M]utual promises to arbitrate is sufficient consideration" for arbitration agreement).[1] For this reason, too, courts have repeatedly rejected plaintiffs' attempts to frame their voidness-for-illegality challenges as attacks on the formation of their arbitration agreements with casino-themed game companies. *See*, *e.g.*, *Hall*, 2026 WL 701560, at *5 (holding that plaintiff's voidness-for-illegality challenge was for the arbitrator, not the court, but noting that even if the plaintiff "specifically attacks the formation of the delegation clause itself, her argument lacks merit" since "[t]he delegation clause is supported by valid consideration separate and apart from the remainder of the agreement because mutual promises to arbitrate and mutual promises to delegate certain issues to the arbitrator are adequate consideration."); *Johnston v. VGW Holdings Ltd.*, No. 3:25-cv-653-RAH, 2026 WL 699708, at *4 (M.D. Ala. Mar. 12, 2026) (same); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *6 (D. Mass. Jan. 6, 2026) (same); *Abbot,* 2026 WL 2139019, at *6 (same).

Finally, the *Wolters* court simply accepted the plaintiff's ***merits allegations*** about illegality as true and faulted the defendant for failing to refute them. 2026 WL 1894240, at *4-5. But the merits of the case are irrelevant—and cannot be considered—on a motion to compel arbitration where, as here, the parties have delegated the merits and questions of arbitrability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("Just as a court may not

[1] Sunflower does not concede that Ohio law applies to the merits of Plaintiff's claims. The Terms contain a choice-of-law clause, pursuant to which the parties agreed that the law of Israel governs the Terms and the parties' relationship. Sunflower Terms, ECF No. 15-2 at PageID 145 § 19.9.

decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). *Wolters*' approach cannot be squared with the FAA because it would mean "the merits of" Plaintiff's entire case—that the Games are unlawful gambling—would "have to be adjudicated in court in order to determine whether the dispute is arbitrable." *Sleeper Farms v. Agway, Inc*., 506 F.3d 98, 103 (1st Cir. 2007).

That is not the law in this Circuit (or any other). As the Sixth Circuit has made clear:

> [T]he question here is quite narrow. It's not about the ***merits*** of the case. It's not even about ***whether*** the parties have to arbitrate the merits. Instead, it's about ***who should decide*** whether the parties have to arbitrate the merits.

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (emphases in original); *see also Negron v. Frank & Woolridge Co.*, No. 1:24 CV 02132, 2025 WL 843758, at *5-6 (N.D. Ohio Mar. 18, 2025) (rejecting plaintiffs' attempt to avoid arbitration by arguing that the contract, including the arbitration provision, was void *ab initio* for illegality under Ohio law because "[p]laintiffs' arguments go to the merits of the case") (citing *Buckeye* and *Rent-A-Center*); *U.S. ex rel. Coastal Roofing Co., Inc. v. P. Browne & Assocs., Inc.*, 585 F. Supp. 2d 708, 713 (D.S.C. 2007) ("The need for the rule announced in *Buckeye* is quite apparent. If this were not the rule, the law in this area would find itself in the situation of the proverbial tail wagging the dog.").

Plaintiff disingenuously posits that applying *Buckeye* here would effectively "insulate[] arbitration agreements from illegality challenges." Opp'n, ECF No. 21 at PageID 175. That is not true. Misguided though his argument may be, no one is stopping Plaintiff from arguing that Sunflower's Games are unlawful gambling and that the Terms, including the arbitration agreement, are void *ab initio*. The point is that, under *Buckeye*, that argument is for the ***arbitrator***, not this Court, to decide. Plaintiff is free to challenge the arbitration agreement's validity and enforceability in arbitration, as his counsel has done and continues to do in arbitrations against similar companies.

## CONCLUSION

For the reasons set forth in the opening brief and above, this Court should compel Plaintiff to submit his claims to arbitration and stay all further proceedings in this Court pending arbitration.

DATED this 18th day of August 2026.

Respectfully submitted,

*/s/ Gregory D. Beaman*

Behnam Dayanim (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 339-8400
bdayanim@orrick.com

Gregory D. Beaman (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY 10019
Tel: (212) 506-5019
gbeaman@orrick.com

Michael M. Rosenberg (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
353 North Clark Street, Suite 3600
Chicago, IL 60654
Tel: (312) 924-9800
mrosenberg@orrick.com

Matthew G. Vansuch (0079328)
ROETZEL & ANDRESS LPA
6550 Seville Dr., Suite B
Canfield, OH 44406
Tel: (330) 533-6195
mvansuch@ralaw.com

*Attorneys for Defendants Sunflower Ltd. and Sunflower Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, I electronically filed the foregoing Reply in Further Support of Defendants Sunflower Ltd. and Sunflower Technology, Inc.'s Motion to Compel Arbitration with the Clerk of Court using the Court's ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gregory D. Beaman*
Gregory D. Beaman